Dunicin, Ch.
Mrs. Dellet, and her brother, Thomas T. Willisson, were tenants in common of the Hamburgh lands. The object of the bill was a partition of these lands.' Although partition was, originally, a matter oí peculiarly equitable cognizance, yet, by the Acts of 1748 and 1791, concurrent jurisdiction is vested in the Court of Common Pleas. Proceedings in partition could have been there instituted by the complainants, and it was not suggested that any legal obstacle could have been interposed to their right of recovery. Perhaps it may disembarrass the case of some complexity, if this be regarded as an application, on the part of the purchasers, to restrain the complainants from prosecuting their proceedings at law for partition. It is not perceived that their claim will be prejudiced by this view. . For although there are cases, in which the Court does not consider itself bound to aid either party, as against the other, where the equities are equal, the rule is here inapplicable. The Court would grant them relief (if at all) to the same extent, and on the same principle, as it will be now administered.
It may be'proper, first, to enquire what was the extent of Willisson’s authority under the letter of 20th January, 1832; *224 supposing both the complainants to be bound bj that letter.
In April, 1822, Dr. Watkins instituted an action of trespass to try the title for these lands, against Willisson, in the Circuit Court of the United States. The defendant adduced no paper title, but relied on his possession. Under the charge of the Judge, a verdict was rendered for the plaintiff, which verdict, after full argument, was set aside by a majority of the' Supreme Court of the United States, at January term, 1830, and a venire facias de novo awarded. Willisson afterwards compromised the case by agreeing to pay Dr. Watkins one thousand dollars.
In reply to Willisson’s letter, informing him of the arrangement of the suit, and asking his opinion as to the disposition of the lands, Dellet writes the letter of 30th January. It is not proposed to comment on all the parts of that letter. This Court concur in opinion with the Circuit Chancellor, that Wil-lisson was thereby" authorized by Dellet to contract for the sale of the land, and to receive the purchase money.- ' But was he authorised to contract for a covenant of warranty? It appears-to the Court that the language of the letter is sufficiently explicit. “Harriet and myself will, at any moment, aid you in the transfer of all our right and title to the Hamburgh land.” In common parlance this is the very definition of a quit claim,as distinguished from a conveyance with warranty. The letter adds “ but think it will be proper to make no warranty.” This, it would seem, left nothing for construction. When it is remembered that both Dellet and Willisson, as well as the purchaser, Whitner, were lawyers, if is difficult to suppose that the extent of the authority was mistaken. It is suggested that other parts of the letter would admit of a different construction. But the Court, do not perceive the discrepancy. Wil-lisson, relying on no other defence than the Statute of Limitations, had conducted the cause of himself and the complainants to a successful issue. He had secured their confidence *225 in hi's skill and fidelity. They were willing to commit to hiS discretion the interests, which, if he had not created, he had contributed, so effectually, to secure. As to the terms of sale; the mode and manner of payment, &c.¡ although hints are offered for his consideration, all is submitted to his better judgment. But Dellet did not require the recent decisions to leach him the uncertainties df litigation, dr the danger of insuring a title to land. The character of his title,- too, was precisely that which, in his situation, he would more readily undertake td transfer than covenant to defend. After presenting the relative advantages of a cash, and credit sale, and providing for a settlement in either contingency, he adds “ thd above hints are' not for the purpose of advising or directing you,” and concludes by an assurance of their readiness, to aid him in the transfer of all their right and title, “ hut think it will he proper to make no warranty.” It seems to the Court that the "hints” and “injunctions” are plainly distinguishable; and that, if this paper was before the patties when the contract of 30th of March; 1832, was executed, neither the agent nor the purchaser supposed, that the covenant of warranty was within the letter of the instructions.- Whitner must have relied on the personal influence, or individual guarantee of Wil-lisson. If he had filed a bill against the principals for specific performance, including the covenant of warranty, a majority of the Court are very clear that the claim could not have been sustained;
But it is said that Willisson had authority to sell without warranty; thathe has only exceeded his power; that the execution of a power may be good in part, and bad in part; and; that, in many cases, only the excess oí a (power will be void; the residue good; It is then insisted that Dellet must be held responsible to the defendants for his inability to cany into effect the contracts of his agent, to the extent to which the power was good.- The principle on this subject is sufficients *226 ly well stated in Alexander vs. Alexander, (2 Ves. 642,) and also in Sugd. on Powers, 549. Where there is a complete* execution of a power, and something ex abundanti added, Which is improper, there the execution shall be good, and only the excess void ; but, where the boundaries between the' excess and execution are not distinguishable, where they are not precise and apparent, it will be bad. The answer of the-defendant, (Whitner,) states that Willison, in consideration of $10,000, “ covenanted to; execute to5 him1 warranty titles to the' land;” “ that the price of the land was enhanced by the agreement of- Willisson, in behalf of himself and the complainants, hr give'a'general warranty title,” and he submits “that a reasonable abatement should be made on the price agreed-' to be paid for the lands, so far as complainants' interests are concerned, inasmuch as they refuse to give full warranty title.”
Who can undertake to say that the covenant of warranty was merely “something ex abundanti added,” that the execution shall be good, and only the excess void, because the' boundaries are distinguishable, precise, and' definite ? It does not resemble the- case cited from- 9‘ Johns. R., Waters vs. Travis, where a party undertook to sell 439 acres of land, at a* dollar'per acre, and was entitled only to 234 acres; nor to' the illustration in the argument, of an agent selling two horses, who had authority to sell only one. If, in Waters vs. Travis, the land had been sold for a gross sum-; and the value had been enhanced in consequence of a mill seat, a spring, or a gold mine, which was aftenvards found not to be within the boundaries; or if, in the latter instance, the horses had commanded- a- high price as a match, the cases would be nearer parallel. But, as it is- said in- the Attorney General vs. Griffith, (13 Ves. 576,) “there is no principle for reforming the contract. It is all conjecture. The Court can never act witth safety in executing such a proposal.” In Young vs. Nash, (3 Atk. 190,) Lord Chancellor Hardwicke held that the con *227 tract must be performed in its entirety, or not at all. “ No 'body can tell,” says he, “what it is that .parties have laid the greatest weight upon, in coming to agreements, and therefore it would be attended with bad consequences, if agreements were to be split, and one part to be decreed and another not.” What was the value at which the .parties rated .a conveyance •of the land without warranty"? What price was -put by them on the covenant of warranty! What sum could the complainants have demanded from Willisson as their share of the pur■chase money! It cannot be doubted that a contract for the land, without warranty, was a contract which Whitner and Willison never made; that Whitner never agreed to pay 410,000 for such a title; and if the complainants, relying on the agreement, had filed a bill for specific performance, tendering a title without warranty, the claim would be dismissed. If their bill had insisted on reforming the contract, according t® the power conferred, and on a reasonable abatement of the price, it can scarcely be denied that a decree in their favor would impose, on the purchaser, an arrangement which he had never made, which his mind had never contemplated, and to which he would, perhaps, have never assented. Agreements, between persons capable of contracting, should be mutually obligatory, or not at all. The agent of the complainants made no contract for a sale without warranty. Be and Whitner may very well have differed as to the value of such title. The complainants may have been hound to receive what Willisson agreed to take for a transfer of their right and title without warranty;; but, as he made no such agreement, Dellet cannot now be required to indemnify the ■defendant for not transferring that, which he, the defendant, ■never agreed to purchase, and for which he could not be compelled to pay.
Then is the defendant, Starke, entitled to reimbursement for the impro vement to the land, made, as he admits, since he *228 had notice of the complainants’ claims? Perhaps it maybe well, first, to regard him as vested with all Willisson’s rigths, and then to enquire whether a tenant in common is entitled to compensation for improvements made on the land of which he was the exclusive occupant, but aware that he was not the exclusive proprietor. In Green vs. Biddle, (8 Wheat. 69,) the relative rights of the owner and adverse occupant of land are discussed. The rule of the English Court, of Chancery is there fully recognized, which allows an account of rents and profits, in all cases, from the time the title accrued, provided that it do not exceed six years, unless under special circumstances. In the class of excepted cases, the account is confined to the time of filing the bill. In the case cited, the Court say “upon the whole, then, we take it to be perfectly clear, that, according to the common law, the principles of equity, and even those of the civil law, the successful claimant of land is entitled to. an account of the mesne profits received by the occupant, from some period prior to the judg-> ment of eviction, or decree.” That case arose under the “occupying-claimant”law of Kentucky, by which the owner of the land was compelled to. pay, to a certain extent, the assessed value of the improvements made on the land by the bona fide occupant, even after notice of an adverse title. It became necessary to consider how far that law could be vindicated on principle, or from precedent. The Court say, “the rule in Coulter's case, (5. C, 30,) is that meliorations of the property, (which, necessarily, mean valuable and lasting improvements,) made at the expense of the occupant of the land, shall be set off against the legal claim, of the proprietor, for profits which have accrued to the occupant during his possession. But, by this Act, the occupant is entitled to the “value of the improvements, to whatever extent they may exceed that o.f the profits; not on the ground of set off against the profits, but as a substantive demand. If the principle which this law asserts, has. *229 p. precedent to warrant it, we can truly say, that we have not met with it.” In another part of the judgment, it is said “nothing can be more clear, upon principles of law and reason, than that a law which clogs the owner’s recovery of his land by conditions and restrictions tending to diminish the value and amount of the thing recovered, impairs his right to, and interest in the property. If there be no remedy to recover the possession, the law necessarily presumes a want of right to it. If the remedy afforded he qualified and restrained hy conditions of any kind, the right of the oionev may indeed subsist, and he acknowledged, hut it is impaired and rendered insecure, according to the nature and extent of such restrictions.”
Recognizing the soundness of these principles, the Court think that, as a general rule, even in the case of a bona fide occupant, who supposes himself the rightful, proprietor, Chancery will not sustain a claim for the value of improvements beyond the rents and profits. And it is held also that the bona fides of his possession ceases so soon as he has notice of the adverse title. It is difficult to prevent the application of the rules to the case of a co-tenant. Although he has an admitted interest in the land, yet he is aware that this interest is limited and not exclusive. Every facility is afforded by the laws for making partition, and it is his own fault if he erects valuable improvements.before his portion has been ascertained and set off to him. But, further, he has no right, unnecessarily, to “clog the recovery” of his co-tenant, and, by changing the character of the premises, interpose obstacles to a partition, which did not originally exist. By the Act of 1791, if the land cannot be fairly and equally divided, the Commissioners may allot the whole to one of the co-tenants on payment of a sum of money, or may recommend a sale. Now, if the tenant in possession may make valuable improvements on a part of the land, it is in his power effectually to prevent a partition, and compel his co-tenant to buy, or sell the whole, *230 contrary, perhaps, both to his interests and wishes. Besides, as was said by Chancellor Kent, in Moore vs. Cable, (1 J. C. R. 388,) “ to make the allowance would be compelling the owner to have his lands cleared, and to pay for clearing them, whether he consented to it or not. The precedent would be liable to abuse.” The Court has found no authority for the claim of the defendant, except the case of Swan vs. Swan, cited at the bar, from (3 Exc. Rep. 443; 8 Price, 518,) and, on reference to the point decided in that cese, it will be found that it was “ referred to the Deputy Remembrancer to take an account of what had been expended necessarily, or with the concurrence of the plaintiff.” The Court is not prepared to go further. And the decision in ex parte Palmer, (2 Hill, C. R. 217,) is ralheran affirmance of the restrictive policy of the Courts in questions of compensation for improvements.
These views have been rendered more satisfactory to my own mind, from having accidentally met, since the argument of the cause, and indeed since the opinion was thus far written, with the decree of Chancellor Harper, in an unpublished case, Thomson et al. vs. Bostick et al., affirmed by the Court of Appeals, at Columbia, May Term, 1831. The bill was filed, by one tenant in common, against the others in possession, for rent. In the account, the Commissioner had credited the defendant with improvements, clearing the land, putting up a cotton screw, &c., to which the complainant excepted. The Chancellor decided that the defendants were chargeable with the rent of the land, estimated as it was when they took possession, and that they were not entitled to credit for the improvements. In the course of his observations he says “one man has no right to improve the land of another at the owner’s expense. But if the tenant out of possession is not to be charged for a share of the improvements, it would be plainly inequitable that he should be allowed to claim the enhanced rent produced by means of such improvements. If the tenant in possession *231 should build a mansion on the land, or a mill, or manufacto-ry, it would be enough that the co-tenant should take his share of the land increased in value by these improvements, without charging the tenant, at whose expense they were constructed, with rent for the time they were used by him, T o apply to the present case. If the premises were improved by the clearing and fencing of new land, or by erecting the cotton screio, defendants have no right to charge for that. They had no right to make improvements at their co-tenants expenser without their consent. But they are not to be charged with the rent of the land cleared by them, because the premises were rendered capable of producing that rent by means of their improvement.” The Court of Appeals reserved their opinion as to the liability of the defendants for the enhanced rent, because the complainants did not appeal; in all other respects, the judgment of the Chancellor was affirmed.
But there is a different view, in which the claim of the defendant may be regarded with more favor, and the Court are very ready to give him the benefit of it. A class of cases exists, in which he who takes possession of lands, under a prima facie legal title, and makes valuable and lasting improvements, which must pass, with the freehold, to the party asserting his-paramount right, is deemed, by the established rules of Chancery, entitled to compensation. Such is the case of a vendee,, who takes possession of land, under an agreement for a sale. So also of a mortgagee in possession, where the Court will not ■permit a redemption without payment for necessary improvements. If these improvements had been made by Whitneiy relying on the authority of Willisson, and before notice from the complainants, I should think him strictly within the protection of the rule. It is admitted, however, that the improvements were not made until after notice of the want of authority in Willison, and of the intention of the complainants to assert their rights. But, it seems, the claim was always accom *232 panied by an assurance that the defendant might retáih tíié land, if he would pay to the complainants their moiety of the purchase money with interest. This offer is repeated in the bill, and again reiterated, by the counsel of the complainants,in the course of the argument here: It is impossible to reconcile the acts of the defendant with ordinary prudence, but on this consideration, and his confident expectation of becoming the ultimate owner, and his conviction that the substantial object of the litigation was to determine the complainants’ right to recover from him a moiety of the purchase money: This Court agree with the presiding Chancellor that, in the state of the pleadings, it would not have been proper to decree an execution of this arrangement. But it would be inequitable, under the circumstances, to allow to the complainants the gratuitous benefit of these improvements. The measure of the defendants’ equity can be more properly fixed when the enquiry to be directed shall have been satisfied.
Gregg, for the motion.-
It is ordered and decreed, that the decree of the Circuit Court be affirmed.
It is further ordered, that it be referred to the Commissioner to enquire and report what improvements on the land have been made by the defendants, and at what time; also, the extent to which the value of the premises has been enhanced in consequence of those improvements. All further questions in relation thereto being reserved until the coming in of the report and the return of the Commissioners in partition.
Johnson, Ch., concurred.-